HARDWARE MUTUAL CASUALTY CO., RESPONDENT, v.
BUTLER ET AL., APPELLANTS.
(No. 8410.)
(Submitted January 4, 1944. Decided April 22, 1944.)
[148 Pac. (2d) 563.]

74

76

Cause submitted on briefs of counsel.

*Mr. Ernest Abel,* for Plaintiff and Respondent.

*Mr. J. P. Freeman,* for Defendants and Appellants Marie L. Butler, Marie L. Butler, Administratrix of the Estate of Larry J. Butler, deceased and J. P. Freeman.

*Messrs. Toomey, McFarland & Hall,* for Defendants and Respondents J. Burke Clements, Albert H. Kruse, John J. Holmes, constituting the Industrial Accident Board of the State of Montana, and said Board.

MR. JUSTICE ADAIR delivered the opinion of the court.

This is an appeal from a judgment. On September 12, 1940, at the intersection of First Avenue South and Eighteenth Street in Great Falls, Montana, a Chevrolet coupe owned and driven by K. H. Knudson collided with Larry J. Butler. From the injuries thus received Butler died. He left surviving him his widow, Marie L. Butler, and four minor female children, namely, Kathleen, Marie Ann, Shiela and Susan.

On December 17, 1940, the widow, Marie L. Butler, employed and retained J. P. Freeman, an attorney-at-law, to bring suit against K. H. Knudson for the damages resulting from his alleged negligent acts in causing the death. The widow was appointed as administratrix of her husband's estate, and attorney J. P. Freeman then filed suit in the district court of Cascade county against Knudson on behalf of the widow and in her name as administratrix, demanding judgment for $20,000.

Section 8659, Revised Codes, provides: "Every person who suffers detriment from the unlawful act or omission of another *may recover from the person in fault* a compensation therefor in money, which is called damages."

Section 9076, Revised Codes, provides: "When the death of one person, not being a minor, is caused by the wrongful act *or*

*neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing [his] death.* * * * In every action under this * * * section, such damages may be given as under all the circumstances of the case may be just.''

Section 9086 provides: ''An action, or cause of action, or defense, shall not abate by death, or other disability of a party, or by the transfer of any interest therein, but shall in all cases, where a cause of action or defense arose in favor of such party prior to his death or other disability, or transfer of interest therein, survive, and be maintained by his representatives or successors in interest; and in case such action has not been begun or defense interposed, the action may be begun or defense set up in the name of his representatives or successors in interest; and in case the action has been begun or defense set up, the court shall, on motion, allow the action or proceeding to be continued by or against his representatives or successors in interest. In case of any transfer of interest, the action or proceeding may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding.''

Thus by express statute was the widow, Marie L. Butler, authorized, both as an heir and as the personal representative of her deceased husband's estate, to maintain the action for damages against the defendant K. H. Knudson, whose negligence she alleged caused the death of her spouse.

At the time she employed J. P. Freeman to bring suit against the alleged tort-feasor Knudson, the widow, Marie L. Butler, entered into a contract with the attorney for a contingent fee of one-half of the amount that might be recovered in a judgment or by a settlement of the case. Section 8993, Revised Codes, provides: ''The compensation of an attorney and counselor for his services is governed by agreement, express or implied, *which is not restrained by law. From the commencement of an action* or the service of an answer containing a counterclaim, *the attorney* who appears for a party *has a lien*

*upon his client's cause of action* or counterclaim, *which attaches* to a verdict, *report,* decision, or judgment in his client's favor, *and the proceeds thereof in whosoever hands they may come; and cannot be affected by any settlement between the parties before* or after *judgment."*

Having a right to maintain the action under an express statute, (secs. 9076 and 9086, supra), the widow had the right to employ an attorney to handle the litigation. For the services so rendered by him, the attorney is entitled to the compensation agreed upon in the express contract entered into with his client, the only restriction being that such contract be "not restrained by law." (Sec. 8993, supra.)

At the time of the accident Larry J. Butler was a laborer in the employ of Lease & Leigland, a co-partnership, and the injuries which resulted in his death were received in the performance of his duties and in the course of such employment. The collision which occasioned the injuries and death did not occur on the premises of the employer, and K. H. Knudson the driver of the car which collided with deceased, was not in the employ of decedent's employer. The employer, Lease & Leigland, was insured under Plan No. 3 of the Workmen's Compensation Act. (Rev. Codes 1935, sec. 2990 et seq.) Claim for compensation was made on behalf of the widow and four minor children, dependents and beneficiaries, and, on October 7, 1940, the Industrial Accident Board awarded compensation to the widow, Marie L. Butler, at the rate of $20 per week for a period of 400 weeks.

At the time of the collision, K. H. Knudson carried with the Hardware Mutual Casualty Company a policy of insurance on his automobile, insuring him against direct loss or expense up to $5,000, arising or resulting from claims against him for damages by reason of his operation of the automobile. When K. H. Knudson was sued, the insurer, Hardware Mutual Casualty Company, appeared in his behalf. Negotiations were thereafter entered into between the attorney for the insurer and the attorney for the administratrix for the settlement of all

claims of the plaintiff administratrix for damages against the insured K. H. Knudson and the insurer Hardware Mutual Casualty Company, resulting on June 3, 1941, in a compromise settlement for the sum of $2,750. On that date the insurer Hardware Mutual Casualty Company issued its draft for $2,750 payable to the order of Marie L. Butler, as administratrix and heir of the estate of Larry J. Butler, deceased, and Paul Freeman, her attorney, and Industrial Accident Board of the State of Montana. Subsequently the compromise settlement was approved by the court wherein the probate proceedings in the estate of Larry J. Butler, deceased, were and are pending. The draft was never endorsed by all the payees, as they were unable to agree upon the disposition of the proceeds, whereupon the insurer, Hardware Mutual Casualty Company, being unable to determine the conflicting claims, deposited the $2,750 with the clerk of the district court and commenced this suit in interpleader.

The Industrial Accident Board alleges an award of $8,000 made to Marie L. Butler to be payable in installments. Of this award the board had actually paid a total of only $798 up to the date of the compromise settlement, yet it contends it has the right to be subrogated to one-half the gross amount of the *award* to the beneficiaries of decedent under the Workmen's Compensation Act, regardless of the sum that had been actually paid by it and *received* by the dependents. In other words, the board contends that it is entitled to *all* that is paid on any compromise settlement up to one-half of its total award. Here, the total award being $8,000, the board lays claim to all moneys received in the suit against the third party up to one-half of such sum, i. e., up to $4,000, and since only $2,750 was paid for the compromise settlement, the board lays claim to this entire amount and, in addition, insists that all the expenses of the prosecution and all the fees due the attorney who handled the litigation must be borne by the widow and her four minor children and that the widow and children shall not be permitted to dip into or use any part or portion of the proceeds of the compromise settlement made in the suit against Knudson for

the payment of either the expenses of the action or for attorney's fees due for its successful prosecution.

The attorney, J. P. Freeman, claims that he is entitled to receive one-half of the amount deposited in court by the insurer as compensation for his services under his express agreement with the widow, Marie L. Butler, at the time he was retained to institute and prosecute the action against the alleged tort-feasor Knudson, and he has filed notice of his attorney's lien in the damage action against Knudson and also in the instant action being the interpleader suit.

Marie L. Butler claims that one-half of the amount of the settlement should be paid to her attorney, J. P. Freeman; that $399 should be paid to the Industrial Accident Board, being one-half of the $798 actually paid to and received by her as compensation under the Act from the date of her husband's death to June 5, 1941, the date of the compromise settlement with the insurer, Hardware Mutual Casualty Company, and that the remainder in the sum of $976 should be delivered to her.

The judgment of the district court was in favor of the Industrial Accident Board, adjudging it to be entitled to all the proceeds of the settlement.

The employee's death resulting, as it did, from personal injuries sustained by him in an accident occurring in the course of his employment and in the performance of his duties, his dependent widow and four minor children were entitled to receive the benefits provided by the Workmen's Compensation Act. Their right to such benefits had, and has, nothing to do with the question of negligence. (Sec. 2836, Rev. Codes.)

It is claimed that the injuries which occasioned the death of the employee were "caused by the act or omission of some person other than his employer." In such case the heirs and personal representatives of the deceased employee have the right, expressly accorded them by statute, to "maintain an action for damages against the person causing [his] death." (Secs. 9076 and 9086, Rev. Codes.) The Workmen's Compensation Act, section 2839, Revised Codes, also specifically provides

that the decedent's "heirs or personal representatives, shall, *in addition* to the right to receive compensation under the Workmen's Compensation Act, *have a right to prosecute any cause of action he may have for damages against such persons * * * causing such injury.*"

In *Bruce* v. *McAdoo,* 65 Mont. 275, 211 Pac. 772, 776, which involved the Workmen's Compensation Act, this court said: "In the absence of such legislation, or a compliance with its provisions, a person injured, or his personal representatives, in case of his death, may maintain an action against any one negligently occasioning the injury. In case of death from the injuries received we have a survival statute (Id., sec. 9086) and also an act conferring an independent right of action upon the heirs of the deceased for injury and damages sustained by them (Id., sec. 9076). *These independent rights of action are not directly or impliedly repealed by the Compensation Act, and only such causes of action are affected thereby as come within its specific provisions.*" (Citing cases.) (Also, see, *Vesel* v. *Jardine Mining Co.,* 110 Mont. 82, 100 Pac. (2d) 75, 127 A. L. R. 1093.) Thus is the widow's action against the alleged tort-feasor Knudson expressly authorized by sections 8659, 9076, 9086 and 2839, Revised Codes. The statute even exacts a penalty for failure to institute, with dispatch, the action against the third party alleged to have caused the injuries and death. Section 2839, Revised Codes, provides that if such action is not brought or if settlement is not made "within six (6) months from the time such injury is received, the employer or insurance carrier who pays such compensation may thereafter bring such action and thus become entitled to *all of the amount received* from the prosecution of such action up to the amount paid the employee under the Workmen's Compensation Act, and all over that amount shall be paid to the employee."

In this case the widow brought her suit against the alleged tort-feasor Knudson within less than five months from the time the injury was received, and she thus avoided the penalty attaching for delay in commencing suit.

From the time the widow made the contract with the attorney for the latter's services, she knew that she was to have and receive but one-half of the proceeds of any settlement that would be made, and that the other half would go to her attorney. Such was the bargain. To the extent of one-half the gross amount actually *received* by the widow as compensation under the Act, the board was and is subrogated. However, as to the amount to be derived from the widow's lawsuit against Knudson which had been assigned to and set aside for the attorney under the latter's contract of employment with the widow, the board was not, and is not, subrogated under the provisions of the Act. Upon such moneys so due the attorney for professional services rendered in that particular action, he has a first and prior lien "in whosesoever hands they may come," given him by express statute. (Sec. 8993, Rev. Codes.) As to such moneys the board may not lay valid claim.

"Subrogation is the creature of equity, and will not be permitted where it will work injustice to the rights of those having equal or superior equities, or where it will operate to defeat a legal right." (25 R. C. L. sec. 9, p. 1321.)

"Equity violates no law, and it does not assume to make a contract for the parties; it follows the law and upholds it, and when it comes to the relief of one to whom the law cannot afford an adequate remedy it will not in so doing infringe the law or impair its force, nor will it reconstruct the contract between the parties." (25 R. C. L. sec. 9, p. 1321.)

"It follows from the very principles of the doctrine of subrogation that one cannot thereby succeed to or acquire any claim or right which the person for whom he is substituted did not have, the extent of his remedies and the measure of his rights being controlled by those possessed by the creditor, and those rights, claims, and securities to which he succeeds are taken subject to the limitations, burdens, and disqualifications incident to them in the hands of his predecessor. Beyond this he has no right and no valid claim for protection. So where one becomes subrogated to the rights of another in an attachment he may

adopt and prosecute the action and make the levy for his own benefit, but if he does so he must take with the benefit of the action the burden of its cost, for it would be unjust to permit him to avail himself of the security without paying what it cost the creditor to procure and preserve it. He must also indemnify the creditor against further costs.'' (25 R. C. L., sec. 60, pp. 1377, 1378.)

Thus the legislature in the enactment of section 2839, Revised Codes, has made provisions for two contingencies respecting suits against third parties whose act or omission may have caused the injury or death of an employee. The statute first provides that the injured employee, or, in case of his death, his heir or personal representative, may bring the action against the third party responsible for the injury or death, insisting that such action be commenced or a settlement thereof made ''within six (6) months from the time such injury is received.'' When the action is so commenced by the injured employee or his heirs or personal representatives within the six-months period, section 2839 further provides: ''All expense of prosecuting such action shall be borne by the employee,'' and that upon the settlement of such action ''the employer or insurance carrier paying such compensation *shall be subrogated to the extent of one-half (½) of the gross amount received by such employee* as compensation under the workmen's compensation law.''

The statute next provides for the contingency which arises ''if the employee shall fail to bring such action or make settlement of his cause of action within six (6) months from the time such injury is received,'' in which case it is provided that the ''employer or insurance carrier who pays such compensation *may thereafter* bring such action and thus *become entitled to all of the amount received from the prosecution of such action* up to the amount paid the employee under the Workmen's Compensation Act, and all over that amount shall be paid to the employee.'' The statute thus holds out an inducement for the early commencement of suit by the injured employee, or, in case of his death, by his heirs or personal representatives by pro-

84

viding that if the injured employee or his successors bring the suit within the six-months period, they must bear the expense of prosecuting such action, and that subrogation will then attach only "to the extent of one-half (½) of the gross *amount received* by such employee," while, if the employer or insurance carrier paying is required to bring and prosecute the suit, then subrogation attaches "to all of the *amount received* from the prosecution of such action up to the *amount paid* the employee under the Workmen's Compensation Act, and all over that amount shall be paid to the employee."

It is to be noted that under the statute, *the amount* to which the right to subrogation may attach is determined by *"the amount paid"* the employee or his personal representative "as compensation" under the workmen's compensation law. That amount is also referred to in the statute as "the gross *amount received* by such employee *as compensation* under the workmen's compensation law." (Sec. 2839, Revised Codes.) When, as here, action is commenced against the third party within six months after the injury was received, "then the employer or insurance carrier paying such compensation shall be subrogated to the extent of one-half (½) of the gross *amount received* by such employee *as compensation under the workmen's compensation law"* and the employer or insurance carrier which shall have *paid* such compensation "shall have a lien on such cause of action for one-half (½) of *the amount paid* to such employee as compensation under the Workmen's Compensation Act." "Amount received" and "amount paid" is the language of the statute. These are ordinary words and phrases employed in their usual, customary and ordinary sense. "Amount" means the sum. "Received" means *actually received* and *"paid"* means actually paid. Thus the "amount received" and the "amount paid" means the *sum actually received* by the employee and the *sum actually paid* by the employer or insurance carrier *"as compensation* under the workmen's compensation law."

At the time of the compromise settlement "the amount paid to such" deceased employee's personal representative was only

$798, and such sum was likewise "the gross amount received by such" deceased employee's personal representative. Hence, the right to subrogation at the time of settlement under the statute would exist only to the amount so *paid* by the insurance carrier and so *received* by the deceased employee's personal representative. By these provisions the legislature has deviated from the general rule which requires that the claim of the creditor must be first paid in full before the right of subrogation may attach.

In 25 R. C. L., title "Subrogation," the rule is stated as follows: "It is generally held that the doctrine of subrogation requires that the person seeking its benefit *must have paid* a debt due to a third person before he can be substituted to that person's rights; and that it is not a liability to pay but an *actual payment* to the creditor which raises the equitable right to subrogation. A demand made by the surety for subrogation before he has discharged the liability out of which it grows is without anything to support it, and the creditor may properly refuse it. (Sec. 4, p. 1315.) * * *

"The general rule is that a person is not entitled to be subrogated to a creditor's securities until the claim of the creditor against the debtor to secure which the securities were given *has been paid in full;* the creditor in the meantime is left in control of the debt, and all the remedies for collection. A *pro tanto* assignment or subrogation will not be allowed. The reason for this rule is that if the surety, upon making a partial payment, became entitled to subrogation *pro tanto,* and thereby became entitled to the position of an assignee of the property to the extent of such payment, it would operate to place such surety upon a footing of equality with the holders of the unpaid part of the debt, and, in case the property was insufficient to pay the remainder of the debt for which the guarantor was bound, the loss would naturally fall proportionately upon the creditor and upon the surety. Such a result would be grossly inequitable. The liability of a surety for the remainder of the debt exists as well after as before a partial payment, and *until the entire debt*

*is paid the surety has no such equity as will entitle him to the active aid of a court of equity.''* (Sec. 6, p. 1318.)

Independent of any provision of the Workmen's Compensation Act, the employer or the insurance carrier paying compensation would have the right to be subrogated to the claim of the injured workman as against a third party whose negligence was responsible for the injuries sustained by the workman. (*Stinchcomb* v. *Dodson,* 190 Okl. 643, 126 Pac. (2d) 257.)

The statute clearly contemplates that when the injured employee or his heirs or personal representatives bring and prosecute the suit, they may conduct the litigation in their own fashion and retain whom they please as their attorney. The statute contemplates that the injured employee or his personal representatives shall make their own arrangements for the payment of the ''expense of prosecuting such action,'' and, to make this definite, the statute provides that: ''All expense of prosecuting such action shall be borne by the employee.'' This does not mean that when the suit results in a cash settlement the plaintiff may not pay the expenses of the litigation out of plaintiff's share of the proceeds. Further, it must be borne in mind that the term ''expense'' or ''expenses'', as employed in a statute, ordinarily does not include ''attorneys' fees.'' (*Hayman* v. *Morris et al.,* 37 N. Y. Supp. (2d) 884, at pages 891, 892; *Conway* v. *Skidmore,* 48 Wyo. 73, 41 Pac. (2d) 1049, 1052; *Delaware L. & W. R. Co.* v. *Fengler,* 288 N. Y. 141, 42 N. E. (2d) 6.)

Here, the widow retained an attorney of her own selection. Through such attorney she brought the action within the six months period. The litigation resulted in a cash settlement. A portion of the proceeds of such settlement, under the equitable doctrine of subrogation, goes to the employer or to the insurance carrier paying the compensation to replenish the fund from which such compensation was paid. However, where as here, one litigant has borne the burden and expense of successful litigation which has created and brought into court a fund in which others share with him, it is only just and equitable that

those who share in the benefits should contribute to the payment for the services of the attorney whose labors resulted in the creating or preserving of such common fund. (*Sears* v. *Inhabitants of Town of Nahant,* 215 Mass. 234, 102 N. E. 491, Ann. Cas. 1914C, 1296.)

The mere fact that the legislature sought to protect the employer or insurance carrier paying, from the ''expense of prosecuting such action'' so instituted by the injured employee or his personal representatives which might prove groundless and unsuccessful, does not indicate an intention to evade or defeat a reasonable and just claim for compensation due an attorney who has successfully conducted the litigation, created a fund and brought that fund into court so that the employer or insurance carrier as well as the employee may share therein. Section 8993, Revised Codes, gives to the attorney so lawfully employed a first and prior lien on his client's cause of action, which lien extends to the proceeds of any settlement and in the hands of whomsoever such proceeds may come, and this statute is neither repealed, modified nor amended, either directly or indirectly, by any provision of the Workmen's Compensation Act.

The Workmen's Compensation Act does not contemplate that the widow's attorney shall render his services gratuitously and Sec. 2839, Revised Codes, makes no provision for, nor mention of, attorneys' fees. Nevertheless, the Industrial Accident Board contends in the present case that, since the settlement is for a less sum than one-half of the amount of its *award,* no part of the proceeds of such settlement may be used to compensate the attorney whose efforts and skill produced the fund in controversy. With this contention we cannot agree. It certainly is not the intent of section 2839, Revised Codes, that the insurance carrier paying the compensation should reap all the benefits of the litigation without bearing any of the burdens thereof. *Qui sentit commodum sentire debet et onus.* ''He who secures the benefit ought to assume the burden.'' Likewise, it was not intended that unless the widow and her four little children have a separate estate from which to pay the expense of the action and

the fees of the attorney who represents their interests as well as the interests of the board in the litigation, the widow must set aside, from her weekly installment payments of $20 as they are paid to her, sufficient moneys to create a sinking fund with which to pay such expense and for the services of the attorney who, at her request, instituted and conducted the litigation which created the fund which here awaits disposition.

True, the law permits the widow to act as her own attorney. She has the right to draft, file and prosecute her own action against the alleged wrongdoer. However, it takes more than the mere right to act as one's own attorney, to successfully institute and prosecute a lawsuit. It takes skill, a knowledge of the law, training and the other attributes that go to make up the stock in trade of a lawyer to properly conduct litigation, and without the assistance of a competent attorney the widow would have been whipped before her action was even well started. It was therefore quite proper for her to retain an attorney to handle this important litigation. The law, by expressly authorizing the widow to maintain the action, thereby impliedly authorized her to retain an attorney and to thereafter compensate him for the services rendered by him in that behalf. When the litigation resulted in a cash settlement, the attorney thereby earned the right to participate in the fruits of his victory and to be compensated from the very moneys which his successful prosecution of the action made available. (Sec. 8993, Revised Codes.)

The subrogation feature of section 2839, supra, simply authorizes the Industrial Accident Board, being the "insurance carrier paying such compensation," to step into the widow's shoes and, so standing, to take from that which belongs to her one-half of the amount *received* by her "as compensation under the workmen's compensation law." But the statute certainly does not authorize the board to step out of the widow's shoes and place its feet in the shoes and its hands into the pockets of her attorney, and to take from the attorney that which is already set aside by statute and by the agreement of the parties to compensate

him whose efforts created the very fund which the court is here called upon to distribute equitably.

Under his employment contract and under the statute the attorney has a lien on the stipulated one-half the proceeds of the compromise settlement, and the balance would be the amount that would be received by the personal representative were it not for the subrogation provisions of the statute. (See 71 C. J. 1612, sec. 1658; *Branch & Howard* v. *Georgia Cas. Co.*, 39 Ga. App. 319, 147 S. E. 144; *Ellis* v. *Atlantic Refining Co.*, 309 Pa. 287, 163 Atl. 531; *Wilson* v. *Pittsburgh B. & I. Works*, 85 Pa. Super. 537; *Appeal of Harris*, 323 Pa. 124, 186 Atl. 92; *Curtin* v. *City of New York*, 287 N. Y. 338, 39 N. E. (2d) 903, 142 A. L. R. 166.)

In *Branch & Howard* v. *Georgia Casualty Co.*, supra the court said: ''The expression in the Workmen's Compensation Act that the person who has paid compensation is entitled to 'indemnity' from the person liable in damages, 'to the extent of the compensation,' does not demand the construction that this indemnity is guaranteed out of the amount of the recovery to the extent of the compensation, but is susceptible to the construction that the right to indemnity goes only to the extent of the compensation, and cannot exceed the amount of the compensation, and that *indemnity up to this amount will not be paid, unless such payment can be made with due regard to the existing rights of others.*'' Again: ''The Act, * * * in providing this indemnity to the person who has paid the compensation, will not be construed as giving to this person this privilege or advantage at the expense of the well-recognized rights of other people in the fund, as, for instance, the right of the attorneys of the beneficiary to a lien for their fees upon the sum recovered of the tort-feasor. * * * If the right of the employee to recover of the tort-feasor is unincumbered with the lien in favor of his attorneys upon the amount recovered, the right of the person who has paid the compensation to recover, by subrogation * * * is necessarily incumbered with the right of the attor-

neys for the employee to enforce any lien which they may have for fees against the sum recovered.''

In the view we take of the statute, the attorney who brought and prosecuted the action against Knudson is entitled under his contract of employment to one-half of the proceeds of the compromise settlement effected in the action. For this amount of the proceeds the attorney has a lien under the provisions of section 8993, Revised Codes, supra. The insurance carrier had *paid* $798 to the personal representative of the deceased employee at the time of the making of the compromise settlement, and to the extent of ''one-half (½) of the amount *paid* to such'' personal representative of the deceased employee and so *''received* by'' her, the right of subrogation attaches and is protected by a lien in favor of the ''insurance carrier who pays such compensation.'' The total so *paid* by the board and *received* by the personal representative of the employee being $798, the amount to which the board is entitled is one-half thereof, or the sum of $399, and the balance of the proceeds of such settlement should be paid to the personal representative of the deceased employee, whom the statute provides ''shall, *in addition to the right to receive compensation* under the Workmen's Compensation Act, have the right to prosecute any cause of action'' she ''may have for damages against such persons or corporations, causing such injury.''

The next to the last sentence of section 2839, Revised Codes, applies only ''In the event that the amount of compensation payable under this Act *shall not have been fully determined* at the time such employee shall receive settlement of his action, prosecuted as aforesaid,'' etc. This provision can have no possible application to this case, for the reason that here the amount of compensation had been fully determined at the time the compromise settlement was made. In other words, the board had fully determined, before the settlement was received, that the amount of compensation should be 400 weeks at $20 per week; hence the provision last mentioned can have no possible application to the instant case.

The judgment of the district court is reversed and the cause remanded with direction to enter judgment for the respective parties in accordance with this opinion.

ASSOCIATE JUSTICES ANDERSON and ERICKSON concur.

MR. JUSTICE MORRIS:

I dissent. The provision in section 2839, Revised Codes, relating to attorney's fee, being a special Act and complete in itself, exclusively controls the case at bar as to the phase of the matter. (*In re Wilson's Estate*, 102 Mont. 178, 56 Pac. (2d) 733, 105 A. L. R. 367.) Sections 8993 and 9076, Revised Codes, have no application here. The pertinent part of section 2839 provides: "In the event said employee shall prosecute an action for damages for or on account of such injuries so received, he shall not be deprived of his right to receive compensation but such compensation shall be received by him in addition to and independent of his right to bring action for such damages, provided, that in the event said employee, or in case of his death, his personal representative, shall bring such action, then the employer or insurance carrier paying such compensation shall be subrogated to the extent of one-half ($\frac{1}{2}$) of the gross amount received by such employee as compensation under the workmen's compensation law. All expense of prosecuting such action shall be borne by the employee, or if the employee shall fail to bring such action or make settlement of his cause of action within six (6) months from the time such injury is received, the employer or insurance carrier who pays such compensation may thereafter bring such action and thus become entitled to all of the amount received from the prosecution of such action up to the amount paid the employee under the Workmen's Compensation Act, and all over that amount shall be paid to the employee. In the event that the amount of compensation payable under this Act shall not have been fully determined at the time such employee shall receive settlement of his action, prosecuted as aforesaid, then the Industrial Accident Board shall determine what proportion of such settlement the insurance carrier would be entitled to receive under its right of subrogation and such find-

ing of the board shall be conclusive. Such employer or insurance carrier shall have a lien on such cause of action for one-half (½) of the amount paid to such employee as compensation under the Workmen's Compensation Act, which shall be a first lien thereon.''

The section is too clear to admit of doubt as to its meaning. The construction placed upon it by the majority is one that simply supplants legislative authority by court mandate : a bold invasion of the province of another branch of state government. Such an act on the part of the court is inexcusable when there is no ambiguity in the statute. It is of no moment as to what the court may think of the merits or demerits of an Act of the legislature. It is the exclusive province of that body to enact statutes and ours to construe them, and we have often said that when the wording of a statute is unambiguous there is nothing to construe, it construes itself. Instead of the widow having any right to make any contract to give an attorney one-half of the amount recovered from the tort-feasor, section 2839 clearly and expressly requires her to pay the attorney for his services.

It is absurd to quote Ruling Case Law, or any other text writer, for the purpose of rendering nugatory an express statute. General rules of equity cannot be applied to vary, contradict, or nullify a clear statutory provision. This ought to be obvious to even a novice in the law.

It is not for this court to enter the field of conjecture and say we do not ''believe'' the legislature intended this, that or the other when the legislative intent is expressed in plain and unambiguous language, and we are expressly required to construe statutes according to the ''approved usage of the language''. (Sec. 15, Rev. Codes.)

The majority return again and again to the false premise that the widow had the right to contract with her attorney to turn over to him funds that section 2839, Revised Codes, says shall belong to the Industrial Accident Fund. When plain words used in their legal sense fail to convince, logic and reasoning are wasted.

In this connection it is interesting to note that by a curious coincidence the legislature by an amendment effective March 16, 1943, for the first time gave the statute the exact effect which the majority seek to give it before the amendment.

Thus while in 1940' section 2839 subrogated the insurance carrier "to the extent of one-half (½) of the gross amount received by such employee as compensation under the workmen's compensation law," the 1943 amendment, Laws 1943, Chapter 230, reduced the right of subrogation *"only* to the extent of *either one-half* (½) of the gross amount received by such employee as compensation under the workmen's compensation law, *or one-half* (½) *of the amount recovered and paid to such employee in settlement of, or by judgment in said action, whichever is the lesser amount."*

And while in 1940 section 2839 provided that the insurance carrier should have "a lien on such cause of action for one-half (½) of the amount paid to such employee as compensation under the Workmen's Compensation Act, which shall be a first lien thereon," the 1943 amendment altered the section to give the insurance carrier "a lien on such cause of action for one-half (½) of the amount paid to such employee as compensation under the Workmen's Compensation Act *or one-half* (½) *of the amount recovered and paid to such employee in settlement of, or by judgment in said action, whichever is the lesser amount,* which shall be a first lien thereon."

Thus the amendment would bring about the exact result contended for here, as to attorneys' fees, by limiting the subrogation and the lien to one-half of the recovery or settlement, if less than one-half of the compensation. Thus one-half of the judgment or settlement would be free from the subrogation right and first lien, so as to be subject to the attorneys' lien under the general statute pertaining to the subject generally.

This court said in *Nichols* v. *School District,* 87 Mont. 181, 287 Pac. 624, 627: "In the construction of an amendatory Act it will be presumed that the Legislature, in adopting it, intended to make some change in the existing law (*State ex rel. Public*

*Service Comm.* v. *Brannon,* 86 Mont. 200, 283 Pac. 202, [67 A. L. R. 1020]), and the courts will endeavor to give some effect to the amendment. (*State ex rel.* [*Federal Land*] *Bank* v. *Hays,* supra [86 Mont. 58, 282 Pac. 32] ; 36 Cyc. 166.) And this presumption is fairly strong in the case of an isolated, independent amendment, as here. (*State ex rel. Rankin* v. *Wibaux County Bank of Wibaux,* 85 Mont. 532, 281 Pac. 341; 36 Cyc. 1164.) When changes have been introduced by amendment, whether by omission, addition, or substitution of words, it is not to be assumed that they are without design. (2 Lewis' Sutherland on Statutory Construction 2d Ed., 777) ''. This is the accepted rule; see 59 C. J. 1096, sec. 647; 25 R. C. L. 1050, sec. 276.

It is true that the rule is not absolute. Thus this court said in *State ex rel. Rankin* v. *Wibaux County Bank,* 85 Mont. 532, 281 Pac. 341, 344: ''It is generally held that where the phraseology of a statute is changed, it will be presumed that the Legislature, in adopting the amendment, intended to make a change in the existing law, and the courts will endeavor to give some effect to the amendment. (36 Cyc. 1164; 2 Lewis' Sutherland on Statutory Construction, sec. 401.) But every change of phraseology does not indicate a change of substance and intent. The change may be made to express more clearly the same intent or to improve the diction.''

But no one can seriously contend that this amendment was ''to express more clearly the same intent or to improve the diction.'' It altered the lien from one upon the entire cause of action up to one-half of the compensation, to one upon only half of the cause of action where the compensation exceeded the judgment or settlement. Obviously a reduction of the lien from 100 per cent. to 50 per cent. of the cause of action is not a clarification of the prior intent nor a mere improvement of the diction.

The 1943 amendment to the section has no application to the case at bar as the events that gave rise to the case before us

occurred prior to the 1943 amendment, and such amendment was not made expressly retroactive. (Sec. 3, Rev. Codes.)

The majority further limit the board's right of subrogation to one-half of the amount of compensation which happens to have been paid at the settlement of the damage action. That construction practically nullifies the provision, since compensation payments are normally made over many weeks, in this case 400 weeks, or over seven years; it removes all certainty and brings the subrogation amount largely within the control of the claimant by her haste in reaching a settlement, to the detriment of the fund.

That the legislature had no such intention is shown by the fact that it used no words which can possibly be construed to limit the board's right of subrogation to one-half of the compensation paid at time of settlement. The statute says that the subrogation shall be "to the extent of one-half (½) of the gross amount received by such employee as compensation." That the legislature meant the entire amount is shown, not only by the fact that it used no words of limitation, but that in addition it expressly provided how the subrogation amount should be determined "in the event that the amount of compensation payable under this Act shall not have been *fully determined* at the time such employee shall receive settlement of his action." Whether the amount of compensation has been fully determined or not is entirely immaterial if the only question is what has already been paid. There is no possible excuse for the misconstruction of so clear a statute, unless words have lost all meaning.

The Act may possibly be more reasonable or workable as amended in 1943 and as now construed by the majority to mean before the amendment, especially if it was intended to encourage damage suits during the six months period granted to claimants by the Act. But the legislature could ban such actions entirely, as it did by section 2839 prior to its amendment in 1933; and the question of legislative policy as to the conditions under which such actions shall be prosecuted, if at all, is not for the courts to determine.

96

The judgment of the lower court should be affirmed.

MR. CHIEF JUSTICE JOHNSON:

I concur in the dissenting opinion of MR. JUSTICE MORRIS.

Rehearing denied May 9, 1944.