[L. A. No. 20067. In Bank. July 31, 1947.]

HAROLD DODDS, Appellant, v. ROBERT WOODLEY STELLAR et al., Defendants; LIBERTY MUTUAL INSURANCE COMPANY (a Corporation), Respondent.

Hahn, Ross & Phillip W. Silver for Appellant.

Lyndol L. Young for Respondent.

Leonard, Hanna & Brophy as Amicus Curiæ, on behalf of Respondent.

SPENCE, J.—Plaintiff appeals from certain orders made in ancillary proceedings in his malpractice action and affecting the distribution of the proceeds of recovery by (1) granting the claimant ''expenditures for compensation'' and (2) denying plaintiff an allowance for attorney fees. Plaintiff argues: (1) the improper scope of the lien award and (2) the inequity of the disallowance of the attorney fee. His position is well taken as to the first point but not as to the second.

While employed as a workman in the yards of the California Shipbuilding Corporation, plaintiff ''suffered a bruise and laceration . . . of his middle, left finger . . . when a steel beam fell upon it.'' In the course of medical treatment for the injury, plaintiff sustained X-ray burns through the negligence of the attending physicians, and the ultimate result was amputation of the finger. Plaintiff brought an action against

the physicians for malpractice and included as defendants his employer and its insurance carrier, Liberty Mutual Insurance Company. Previously plaintiff had applied to the Industrial Accident Commission for compensation benefits by reason of his industrial injury and on November 28, 1944, an award was made against the insurance carrier. On February 28, 1945, the latter served upon plaintiff a notice of claim of a lien in the malpractice action in the amount of $4,494.81, by reason of the compensation award. Meanwhile as a special defense in the malpractice action, the insurance carrier had urged that the Industrial Accident Commission had exclusive jurisdiction over plaintiff's claim of liability against it. That single issue was severed for separate trial by the court without a jury on March 29, 1945, and was determined in favor of the insurance carrier. A separate judgment of dismissal was made accordingly. The malpractice action against the physicians then proceeded to trial before a jury and on April 11, 1945, judgment for plaintiff was entered for the sum of $14,942.05, based upon a verdict which had awarded $10,000 general damages and $4,942.05 special damages. That judgment has become final. (*Dodds* v. *Stellar,* 77 Cal.App.2d 411 [175 P.2d 607].)

On June 12, 1945, Liberty Mutual Insurance Company served and filed its notice of motion for an order ''allowing a lien against the judgment of the plaintiff . . . in the sum'' theretofore claimed, to wit, ''$4,494.81 duly paid out by [it] as insurance carrier for [plaintiff's] employer . . . by reason of the injuries sustained by . . . plaintiff arising out of his . . . employment, and pursuant to the award of the Industrial Accident Commission . . . dated November 28, 1944, and the provisions of the Labor Code.'' On June 18, 1945, plaintiff served and filed his notice of motion for an order allowing counsel fees to his attorneys ''on that part of the judgment heretofore entered . . . upon which the Liberty Mutual Insurance Company is granted a lien . . . on the ground that the . . . action was a representative suit brought by the plaintiff on his own behalf and on behalf of the . . . Company . . . and for the benefit of [both] to obtain a common fund.'' Supporting and opposing affidavits were served and filed; and on June 28, 1945, after both motions had been argued and submitted, the court made its order granting the insurance carrier's lien in the sum of $4,494.81 and denying plaintiff's application for attorney fees. On July 3, 1945, plaintiff served and filed two notices of motion: (1) for reconsidera-

tion and setting aside of the order of June 28, permitting the insurance carrier to assert its lien in the malpractice action; and (2) for reopening the matter of the lien allowance on the ground that the application of the insurance carrier "failed to segregate and itemize all the moneys claimed to have been expended by them for which they claim a lien." Both of these motions were denied on July 30, 1945. Plaintiff has appealed from such denial as well as from the original order granting the insurance carrier's lien and denying him attorney fees.

Plaintiff does not now challenge the propriety of the insurance carrier's assertion of a lien in the malpractice action (*Heaton* v. *Kerlan,* 27 Cal.2d 716, 721 [166 P.2d 857]), but he contends that the trial court made an excessive allowance. Thus, he maintains that it was error to include in such lien "(a) any sums of money expended by the [insurance carrier] which were not recovered by" plaintiff in the malpractice action; "(b) payment of medical expenditures in the treatment of ailments wholly disconnected with the injury sustained by plaintiff as the result of the acts of the" negligent physicians; and "(c) payment of medical expended by the lien claimant . . . for [its] sole benefit . . . to aid [it] in determining the extent of [its] liability . . . for future medical or disability payments." Upon this basis plaintiff urges that the lien should be limited to the sum of $3,668.80, representing $1,525 for compensation payments and $2,143.80 for hospitalization and medical services allegedly allowed in the computation of the special damages in the malpractice action. The insurance carrier takes the position that "no evidence which developed during the trial of the [malpractice] action . . . could have any effect whatever on the amount of the lien covering actual expenditures made by the insurance carrier under the award of the Industrial Accident Commission to the plaintiff," and therefore its lien claim of $4,494.81, representing $1,525 for compensation payments and $2,969.81 for medical payments must be sustained. Thus, the point of dispute between the parties concerns only the discrepancy as to the item of hospital and medical expense properly entering into the lien allowance.

In opposing any deductions from its lien on plaintiff's judgment, the insurance carrier argues that plaintiff is concluded by his stipulation in the trial court "that the Liberty Mutual Insurance Company did spend the sum of $1,525.00

as compensation payments and the sum of $2,969.81 for medical expenses,'' or a total of $4,494.81. By reason of this agreement as to the ''correctness of the full amount of [its] expenditures,'' the insurance carrier asserts that it did not introduce in evidence at the hearing on the lien allowance its file of hospital and medical expenses. It also maintains that in the light of such stipulation the trial court properly deemed it unnecessary for the insurance carrier to segregate and itemize its medical expenditures in establishing the extent of its lien. But the stipulation cannot be reasonably interpreted on that basis. Rather, it only recognized the insurance carrier's payments to have been made in pursuance of the Industrial Accident Commission's award and did not relieve the insurance carrier of the duty of correlating its lien claim with the damages recoverable in the malpractice action. These considerations, indicating the false premise of the trial court's decision as to the scope of the lien, render inapplicable the general rule, cited by the insurance carrier, that ''where the trial court makes a finding on conflicting evidence, [it] is binding on an appellate court if there is any substantial evidence whatsoever in the record in support thereof.'' Here the trial court resolved no conflict in the evidence but assigned an erroneous effect to plaintiff's stipulation which in nowise can be said to constitute ''substantial evidence . . . in support'' of the lien allowance.

█ The insurance carrier for the employer, seeking reimbursement for expenditures in compensating the employee for an industrial injury which has been aggravated by the negligent treatment of a doctor, may bring an action against such third party tort feasor (Lab. Code, § 3852), but its right of recovery therein will depend on the establishment of a causal connection between the malpractice and the injury sustained in the employment. (*Hartford Acc. & Indem. Co.* v. *Sprague,* 6 Cal.App.2d 61, 63 [44 P.2d 361].) █ The same principle applies where the employee brings the action against the doctor whose negligent treatment has aggravated the industrial injury and the insurance carrier, because of ''expenditures for compensation'' in relation to such injury, claims a lien against the judgment for damages recovered by the employee. (Lab. Code, § 3856.) Such lien is limited to the amount actually paid by the insurance carrier or for which it has become liable because of the malpractice. Thus, it is said in *Heaton* v. *Kerlan, supra,* 27 Cal.2d 716, at page 720:

"It has been settled by decisions in tort actions that the aggravation of injuries by the negligence of a doctor is within the scope of the risk created by the original tortious act. (Citing cases.) The same rule applies in this state in workmen's compensation cases. '. . . "under the great weight of authority the employer is liable for all legitimate consequences following an accident, including unskilfulness or error of judgment of the physician furnished as required, and the employee is entitled to recover under the schedule of compensation for the extent of his disability based on the ultimate result of the accident, regardless of the fact that the disability has been aggravated and increased by the intervening negligence or carelessness of the employer's selected physician." The reasonableness of this principle is patent.' (Citing cases.)" And continuing on pages 722-723: "In the present case the commission determined the amount of the disability benefits to which [the employee] was entitled under the act, but it did not determine what part thereof was attributable to the aggravation of [the employee's] injury caused by the doctor's malpractice. Since [the employee] was entitled to compensation for the injury including such aggravation, the commission had no reason to determine to what extent [the employee's] disability was caused by· the malpractice, or the amount of compensation payable for disability so caused. Awards for disability are based on the ultimate result of the accident; . . . . Whether or not there was malpractice had to be determined in the action against the doctor. Given this determination, it remains to be determined what aggravation of the original injury resulted from the malpractice. The amount of [the insurance carrier's] lien is equal to the amount of compensation paid or payable, including medical expenditures not covered by the award, that was attributable to the malpractice. In other words, the amount of the [insurance carrier's] lien is limited to the amount that he is required to pay because of the malpractice."

In line with these authorities, plaintiff objects to the insurance carrier's lien allowance as including these items: (1) moneys paid to a medical examiner appointed by the Industrial Accident Commission to determine the extent of plaintiff's continued disability; (2) moneys paid for medical treatment of a low back pain, an independent disabling injury suffered by plaintiff; (3) moneys paid for telephone calls and guest trays as shown by the hospital records; (4) moneys

paid as the result of unnecessary prolongation of plaintiff's stay in the hospital and disallowed by the court; and (5) moneys paid to various doctors consulted not for the purpose of treating plaintiff, but for advice as to any liability the insurance carrier owed plaintiff by reason of his finger injury. An examination of the reporter's transcript of the trial in the malpractice action discloses that these items were not deemed properly recoverable therein though, as the insurance carrier maintains, they constituted a part of its liability under the compensation award in favor of plaintiff. However, the record evidence submitted in this case does not establish with any degree of certainty the precise amounts of these challenged medical expenses and they remain a matter for proof upon a retrial of the issue, at which time "the amount of the [insurance carrier's] lien" should be "limited to the amount that [it was] required to pay because of the malpractice." (*Heaton* v. *Kerlan, supra,* 27 Cal.2d 716, 723.)

Turning now to the second point of dispute on this appeal, plaintiff protests the disallowance of attorney fees for his counsel from that amount of the judgment payable to the insurance carrier in satisfaction of its lien. It is plaintiff's position that the malpractice action was "a representative suit," brought by him on his own behalf and on behalf of the insurance carrier, for the benefit of both, and to obtain a common fund. Upon this basis he cites "a well-established doctrine of equity jurisprudence" that "where a lawyer has rendered . . . service" of such value "as to make available a fund for a class, even though he appeared for only one claimant, it is equitable that his compensation and expenses should come from the entire fund saved for all classes concerned before it is distributed." (*Winslow* v. *Harold G. Ferguson Corp.,* 25 Cal.2d 274, 284 [153 P.2d 714]; see, also, *Estate of Marre,* 18 Cal.2d 191, 192 [114 P.2d 591].) Here plaintiff urges that the insurance carrier failed to bring an independent action to recover from the negligent doctors its "expenditures for compensation" by reason of the malpractice but simply filed notice of its claim of lien upon such judgment as plaintiff might obtain; that the insurance carrier rendered no assistance to plaintiff or his counsel in the prosecution of the malpractice action; that recovery was had solely by virtue of the legal services of plaintiff's counsel and that the insurance carrier benefited by the judgment in that its lien will be paid, whereas it otherwise would have no value; that

certain court expenses have been incurred by plaintiff that are not taxable as costs in the malpractice action; that plaintiff has agreed to pay his own counsel 30 per cent of any judgment obtained in the malpractice action; and that it would be equitable to order the insurance carrier to pay a like percentage of the amount of its lien to plaintiff's counsel for recovering its "expenditures for compensation."

In opposing plaintiff's classification of the malpractice action as a "representative" or "class" suit, the insurance carrier cites these matters of record: that plaintiff included it as a defendant in the malpractice action; that its defense necessitated the preparation, filing and argument of certain pleadings, and ultimately separate trial on the special issue of the jurisdiction of the court over plaintiff's claim of liability against it; and that upon the filing of findings of fact and conclusions of law, a formal judgment of dismissal was entered in its favor in the malpractice action. The insurance carrier further refers to the independent status of its interest in plaintiff's action by its own counsel proceeding with the timely assertion of its lien claim therein, with which legal services plaintiff's counsel "had nothing whatever to do" and for which it alone was responsible. But irrespective of these factual considerations indicating the "adverse position" of the parties in the initial stages of the litigation and the independent legal procedure required of the insurance carrier as lien claimant, the latter correctly maintains that the rights of the parties are wholly governed by statute (Lab. Code, §§ 3850-3862; *Limited Mutual Compensation Ins. Co.* v. *Billings,* 74 Cal.App.2d 881, 883 [169 P.2d 673]) and that thereby its lien is not subject to the reduction suggested by plaintiff.

The Workmen's Compensation Act, as carried into the Labor Code, gives the employer or its insurance carrier, upon paying or becoming obligated to pay compensation to the employee for disability suffered in the course of employment as the result of negligence of a third party, the right of reimbursement for such expenditure. This right the employer or its insurance carrier may exercise in any one of three ways: It may bring an independent suit (Lab. Code, § 3852); it may join in an action brought by the injured employee (Lab. Code, § 3853); or "if [it] has not joined in the action or has not brought action, or if [its] action has not been consolidated," it may claim in the employee's action "as a first

lien against the entire amount of any judgment for any damages recovered by the employee, the amount of [its] expenditures for compensation, . . ." (Lab. Code, § 3856.) The choice of procedure is at the option of the employer or its subrogated insurance carrier (*Chase* v. *Southern Pacific Co.,* 6 Cal.App.2d 273, 277 [43 P.2d 1108]) but whether it chooses (1) to sue, (2) to intervene as a party in the employee's suit or (3) to file a lien claim in the latter's litigation, the statute clearly envisages that it shall recoup the full amount of its lien out of the entire amount of the judgment recovered. Thus, where the employee brings his action for damages for negligently inflicted injuries and the employer or its insurance carrier timely asserts its lien therein, the employee takes "the position of statutory trustee for his employer [or its insurance carrier] to the extent of the compensation, etc., paid." (*Pacific Indemnity Co.* v. *California Electric Works, Ltd.,* 29 Cal.App.2d 260, 269 [84 P.2d 313].) The employee may sue but he must do so without prejudice to the statutory right of reimbursement granted to the employer or its insurance carrier. (*Jacobsen* v. *Industrial Acc. Com.,* 212 Cal. 440, 448 [299 P. 66].)

Plaintiff concedes that there is no statutory provision for the allowance of attorney fees from the specified reimbursement lien in the employee's action, but he cites in favor of such deduction the considerations prevailing when the employer or its insurance carrier brings an independent suit against the negligent third party. But these precise differences in the statutory regulations only serve to emphasize the plain distinctions made by the Legislature in this regard. Thus, by section 3854 of the Labor Code, "if the action is prosecuted by the employer [or its insurance carrier] alone, . . . after recouping for [its] special damages, *together with a reasonable attorney's fee* fixed by the court, [it] shall pay any excess to the injured employee. . . ." (Emphasis added.) In contrast to such authorized deduction of attorney fees from the amount which would otherwise be payable to the employee in the course of the employer's or insurance carrier's accounting to the employee (see *State Compensation Insurance Fund* v. *Dalton,* 13 Cal.App.2d 284, 289 [56 P.2d 962]), the employee is not allowed such item when he prosecutes the damage action and the claim of the employer or its insurance carrier for "the amount of [its] expenditures for compensation" is made "a first lien against the entire amount

of [the] judgment . . . recovered by the employee.'' (Lab. Code, § 3856.) In view of these express provisions making the disposition of the proceeds in the damage recovery dependent on whether (1) the employee or (2) the employer or its insurance carrier brings the action and emphasizing that in either event the statutory recoupment right in favor of the employer or its insurance carrier has first consideration, there is no basis for classifying the action as a ''class suit'' and apportioning litigation expenses between the parties benefiting from the recovery. If such analogy were followed so as to impress a proportionate liability for attorney fees upon the employer's or insurance carrier's lien for ''expenditures for compensation,'' its full reimbursement as accorded by statute would be to that extent nullified. (Cf. *Hudson* v. *Union Indemnity Co.*, 9 La.App. 257 [119 So. 462]; *Spinner* v. *Fidelity & Casualty Co. of New York*, 245 Ky. 519 [53 S.W.2d 946].)

Other statutory provisions pertinent to the rights of the employee and the employer or its subrogated insurance carrier in workmen's compensation matters strengthen the conclusion that the lien here in question is not subject to such deduction as suggested by plaintiff. Thus, section 3858 of the Labor Code provides that ''after payment of the employer's [or the insurance carrier's] lien, [it] shall be relieved from the obligation to pay further compensation to or on behalf of the employee . . . *up to the entire amount of the balance of the judgment,* if satisfied, *without any deduction.''* (Emphasis added.) Section 3860 provides that ''no release or settlement . . . after action and before judgment is valid and binding without notice . . . and opportunity to the employer [or its insurance carrier] to recover the amount of compensation [it] has paid or become obligated to pay'' and ''the *entire amount* of such settlement, or of any settlement without suit, is subject to the employer's [or the insurance carrier's] *full claim for reimbursement* for [its] compensation expenditures and liability.'' (Emphasis added.) And section 3861 requires the Industrial Accident Commission to allow ''as a credit to the employer [or its insurance carrier] to be applied against [its] liability for compensation, such amount of any recovery by the employee for his injury, either by settlement or after judgment, as has not theretofore been applied to reimburse the employer [or its insurance carrier].''

These several statutory provisions clearly define the rights of the parties and completely cover the field. They emphasize the separate and distinct interest of the employer or its insurance carrier in the avails of the damage recovery for its full protection and leave no room for the evaluation of the rights of the parties in a manner inconsistent with the legislative plan. If there is to be any change in these statutory provisions defining the rights of the parties, the suggestion for such change should be addressed to the Legislature rather than to the courts.

The order granting the Liberty Mutual Insurance Company a lien in the sum of $4,494.81 is reversed, with directions to the trial court to determine the amount of the lien allowance in accordance with the views herein expressed. The order denying plaintiff's application for attorney fees is affirmed. The parties will bear their own costs on these appeals.

Gibson, C. J., Shenk, J., Edmonds, J., and Traynor, J., concurred.

CARTER, J.—I dissent.

I do not agree with that portion of the majority opinion which holds that the injured employee is not entitled to have his employer (when the word ''employer'' is used herein it indicates the employer's insurance carrier) bear a share of the expenses (including attorney's fees) incurred in the employee's action for damages where he recovers from the third party tort feasor expenditures made by the employer as the result of injuries suffered by such employee by reason of the negligence of such third party tort feasor, or the holding that if the *employer* sues the third party tort feasor on behalf of himself and such employee *he may have his attorney's fees* and expenses paid out of the judgment recovered against such third party. We have here a simple case where an employee has suffered an injury compensable under the workmen's compensation law, but the injury was due to the negligence of a third party tort feasor. In such a case the employee may recover from the third person but the employer is entitled to a lien against any judgment so recovered as reimbursement for amounts paid as compensation and medical and hospital treatment to or on behalf of the injured employee.

At the outset it should be noted that the majority opinion holds (as I have above stated) that the workmen's compensa-

tion law, properly interpreted, provides that the *employer* may have his attorney's fees paid from the judgment against the tort feasor when he brings the action, but the *employee* may not when he brings the action, and that means not only that such fees come out of the judgment, but they come out of the portion of the surplus that would be payable to the employee after the employer is reimbursed; that is, the employer would be entitled to have *all of the fees paid out of the employee's share of the judgment*. There is not even a sharing of those fees between the employer and the employee. On the other hand when the employee sues he is not entitled to subject the recovery on behalf of the employer to the payment of any portion of such fees. He must pay them all. Suppose the compensation paid to the employee was $4,000, the attorney's fee a 25 per cent contingency, and the recovery from the tort feasor was $4,000. The employer would be made whole and the employee would suffer a total loss of $1,000 or his attorney would receive no fee. *If the provisions of the Workmen's Compensation Act are so construed they are clearly discriminatory and violate the privileges and immunities and equal protection provisions of the 14th Amendment to the Constitution of the United States.* In *Builders' Supply Depot* v. *O'Connor,* 150 Cal. 265, 268 [88 P. 982, 119 Am.St.Rep. 193, 17 L.R.A. N.S. 909], this court declared unconstitutional a provision in the mechanics' lien law allowing attorney's fees to the lien claimant in an action to enforce his lien but denying this right to the defendant or other persons similarly situated. The court stated: ''This provision is in our opinion violative both of the federal and the state constitution—of the fourteenth amendment of the former, which guarantees to every person 'the equal protection of the law,' and of the provisions of the state constitution which provide that general laws shall be uniform, prohibit special laws, and declare the inalienable rights of all men of acquiring, possessing, and protecting property. A statute which gives an attorney's fee to one party in an action and denies it to the other, and allows such fee in one kind of action and not in other kinds of actions where, as in the statute here in question, the distinction is not founded on constitutional or natural differences, is clearly violative of the constitutional provisions above noticed. That said law is violative of the fourteenth amendment to the federal constitution was established by the supreme court of the United States in *Gulf etc. Ry. Co.* v. *Ellis,* 165 U.S. 150 [17 S.Ct. 255, 41 L.Ed. 666].''

In the instant case there is no basis for a constitutional classification or distinction between the employer and employee with reference to the allowance of attorney's fees. The employer or his insurance carrier is bound to pay the compensation and the employee is entitled to receive it. Either the employer or the employee may sue the tort feasor for the total damages incurred by the employee including expenses for medical and hospital treatment furnished by the employer or his insurance carrier. The action is for the benefit of both, regardless of which one sues. The employer is entitled to reimbursment because he was required to pay a law-imposed obligation arising out of a tort for which he was in nowise at fault. The real wrongdoer is the tort feasor. The employee is entitled to recover damages because workmen's compensation benefits do not include all the elements of damage involved in his injury and the tort feasor is liable for all damages suffered by him. Basically there is no distinction whatsoever between their positions, hence there is no basis for allowing the employer to recover his attorney's fees and the employee not, when each is protecting his own rights and the rights of the other in the action.

If the provision authorizing attorney's fees to the employer but not to the employee is invalid, then we have no provision in either case and the equitable principle (hereafter discussed) requiring a sharing of the fees must be enforced. On the other hand, I would be disposed to hold that while the statute would be unconstitutional if construed as allowing attorney's fees to the employer only, in view of the rule that a statute must be construed to avoid invalidity if possible, it would be reasonable to construe this statute to authorize both the employer and employee to share the attorney's fees regardless of who prosecutes the action, thus avoiding discrimination and the denial of equal protection to the employee.

Turning to the question of the construction of the provisions of the workmen's compensation statute it is clear that there is no authority for either granting or denying the employee the right to require the employer to pay his share of the attorney's fees. After providing that either the employer or employee may bring the action against the tort feasor, and for notice by the one bringing the action to the other, it is stated: "The court shall first apply, out of the *entire* amount of any judgment for any damage recovered by the employee, a sufficient amount to reimburse the employer

for the amount of his expenditures for compensation. If the employer has not joined in the action or has not brought action, or if his action has not been consolidated, the court, on his application shall allow, as a first lien against the *entire* amount of any judgment for any damages recovered by the employee, the amount of the employer's expenditures for compensation.'' (Lab. Code, § 3856.) [Emphasis added.] And that: ''After payment of the employer's lien, the employer shall be relieved from the obligation to pay further compensation to or on behalf of the employee under this division up to the *entire* amount of the balance of the judgment, if satisfied, without any deduction.'' (Lab. Code, § 3858.) [Emphasis added.] The only basis for asserting that those provisions prohibit the sharing of attorney's fees is the reference to the lien as being against the *entire* judgment for damages. Obviously that does not refer to the judgment without having first deducted attorney's fees incurred in the prosecution of the action. Such phraseology was used for the sole purpose of having the lien attach not only to the portion of the judgment which represented the amount of compensation paid but also to the balance thereof including allowances for pain and suffering and other items not compensable under workmen's compensation laws. It was adopted by amendment to meet cases reaching a contrary result. (See *Jacobsen v. Industrial Acc. Com.*, 212 Cal. 440 [299 P. 66].) That is succinctly stated in *Heaton v. Kerlan*, 27 Cal.2d 716, 723 [166 P.2d 857] : ''The employer's lien attaches to the '*entire amount*' of a judgment '*for any damages.*' (Lab. Code, § 3856.) *The Legislature so defined the lien* (Stats. 1931, p. 2370, Deering's Gen. Laws, 1931, Act 4749) *after this court held that the lien of the employer under the former statute did not attach to that part of a judgment representing damages for the employee's pain and suffering,* and suggested that the difficulties of segregating the elements of the employee's recovery 'might well call for further legislative action on the subject.' (*Jacobsen v. Industrial Acc. Com., supra,* 212 Cal. 440, 449.) Under the statute as amended, it is clear that the employer's lien attaches to the *entire judgment* and that it is no longer necessary to segregate the part thereof that represents damages for pain and suffering. (*Pacific Gas & Electric Co. v. Industrial Acc. Com.,* 8 Cal.App.2d 499, 504 [47 P.2d 783].)'' [Emphasis added.]

The majority opinion argues that because attorney's fees are allowed to the employer expressly that the absence of a

similar express provision for the employee shows an intent that attorney's fees shall not be shared. I have pointed out the invalidity or doubtful validity of such a provision on the assumption that such was the law of this state.

Thus, we have no provision one way or another on attorney's fees or the sharing thereof. Hence, the equitable principle that when expenditures are incurred to recover a common fund (the judgment against the tort feasor which inures to the benefit of both employer and employee) the beneficiaries of the fund must share those expenditures or, as said in *Winslow* v. *Harold G. Ferguson Corp.*, 25 Cal.2d 274, at 277 [153 P.2d 714]: ''It is a well-established doctrine of equity jurisprudence that where a common fund exists to which a number of persons are entitled and in their interest successful litigation is maintained for its preservation and protection, an allowance of counsel fees may properly be made from such fund. By this means all of the beneficiaries of the fund pay their share of the expense necessary to make it available to them. (14 Am.Jur. § 74, p. 47; *Trustees of Int. Imp. Fund* v. *Greenough,* 105 U.S. 527 [26 L.Ed. 1157]; *Estate of Marre,* 18 Cal.2d 191 [114 P.2d 591]; see, also, notes 49 A.L.R. 1149; 107 A.L.R. 749.)'' And at page 283: '' [The] long prevailing rule in equity which allows such charge as a proper means of securing contribution from those entitled to participate in the benefits of the litigation. And such counsel fees are customarily made senior to other claims against the fund. (*Scott* v. *Superior Court,* 208 Cal. 303 [281 P. 55].) . . . Where a lawyer has rendered such valuable service as to make available a fund for a class, *even though he appeared for only one claimant,* it is equitable that his compensation and expenses should come from the entire fund saved for all classes concerned before it is distributed. (*Sprague* v. *Ticonic Nat. Bank,* 307 U.S. 161 [59 S.Ct. 777, 83 L.Ed. 1184].) Counsel's right to compensation under such circumstances arises from the benefit conferred upon those who would have suffered loss but for his timely intervention, and not by reason of an agreement to pay his fees. . . . As is stated in *Estate of Marre,* 18 Cal.2d 191, 192 [114 P.2d 591]; 'Plaintiffs who have succeeded in protecting, preserving or increasing a fund for the benefit of themselves and others may be awarded compensation from the fund for the services of their attorneys.' This principle is derived from the equitable concept that where one of a group has borne the cost of litigation resulting in

benefit to the entire group, the latter should contribute to such expenses. (*Nolte* v. *Hudson Nav. Co.*, 47 F.2d 166; *O'Hara* v. *Oakland County*, 136 F.2d 152.])

"Not only is it established that the litigant is entitled to be compensated for the expense he has incurred in the prosecution of such an action, but *there is created in favor of the attorney who renders the service an equitable lien against the fund so preserved.* (*Central Railroad & Bkg. Co.* v. *Pettus*, 113 U.S. 116 [5 S.Ct. 387, 28 L.Ed. 915]; *Colley* v. *Wolcott*, 187 F. 595 [109 C.C.A. 425]; *Muskegon Boiler Workers* v. *Tennessee Valley I. & R. Co.*, 274 F. 836.)

"These equitable considerations sustain appellant's position as to the *priority* of his claim against the trust fund. . . . Nor on equitable considerations should the claim of the federal government for income taxes accrued before the commencement of this action stand on a distinguishable level in relation to appellant's allowance for counsel fees for preservation of the fund. *The latter,* viewed as an expense of judicial administration in making the trust assets available for distribution to claimants, should properly *take priority.*" [Emphasis added.]

In my opinion the equitable principle discussed above is applicable to the facts of this case. It has been applied in many cases involving similar factual situations. (See *Hardware Mut. Casualty Co.* v. *Butler*, 116 Mont. 73 [148 P.2d 563]; *Ellis* v. *Atlantic Refining Co.*, 308 Pa. 287 [163 A. 531, 83 A.L.R. 936]; *Appeal of Harris*, 323 Pa. 124 [186 A. 92, 96]; *Wilson* v. *Pittsburgh B. & I. Works*, 85 Pa.Super. 537.)

The order denying plaintiff's application for attorney's fees should be reversed.

Schauer, J., concurred.