Mrs. Lee E. **BOULDEN**, Administratrix
of the Estate of Lee E. Boulden,
Deceased, Plaintiff,

v.

**M. HERRING** and M. Herring Wholesale
Lumber Company, a Corporation,
Defendants,

Hope Flooring & Lumber Company and
Commercial Standard Insurance
Company, Intervenors.

Civ. A. No. 523.

United States District Court,
W. D. Arkansas, Hot Springs Division.

Dec. 17, 1954.

Mrs. Lee E. Boulden, pro se.

Lookadoo & Lookadoo, Arkadelphia, Ark., for plaintiff.

Hardin, Barton, Hardin & Garner, Fort Smith, Ark., for petitioners Lookadoo & Lookadoo.

Goodwin & Riffel, Gannaway & Gannaway, Little Rock, Ark., for intervenors.

Defendants had no interest in the matter and were not represented.

JOHN E. MILLER, District Judge.

The questions before the court for determination are mixed questions of law and fact, and it seems desirable to dispose of them in an opinion rather than by separate findings of fact and conclusions of law. There is no substantial factual dispute between the parties, but the contentions of the parties to this proceeding arise from conflicting inferences drawn from the undisputed facts.

On April 9, 1953, the plaintiff appeared by her attorneys, Lookadoo & Lookadoo, the defendants, M. Herring and M. Herring Wholesale Lumber Company, a corporation, appeared by their attorneys, Wootton, Land & Matthews, and the intervenors, Hope Flooring and Lumber Company and Commercial Standard Insurance Company, appeared by their attorneys, Gannaway & Gannaway, and "by consent of all parties, a jury is waived, and this cause is submitted to the court sitting as a jury." At the conclusion of the hearing at that time, the court entered a judgment in the sum of $15,000 in favor of the plaintiff, Mrs. Lee E. Boulden, Administratrix, for the benefit of the Estate of Lee E. Boulden, deceased, and the widow and next of kin, against the defendants. It is recited in the judgment that the court found the intervenors "are entitled to a lien upon the said sum of Fifteen Thousand ($15,000) Dollars, by reason of payments heretofore made, and hereafter to be made, to the said Mrs. Lee E. Boulden, under provisions of the Workmen's Compensation Law of the State of Arkansas, but the (determination of the) amount of such lien should be reserved for the further consideration and judgment of this court."

The court further directed that the defendants should pay into the registry of the court the said sum of $15,000, being $5,000 for the use and benefit of the Estate of Lee E. Boulden, deceased, and $10,000 for the use and benefit of the widow and next of kin, and that, upon the deposit of said sum in the registry of the court, the defendants "shall be acquitted of all further liability to both the plaintiffs and the intervenors herein, and said judgment shall be satisfied of record."

The defendants deposited the said sum of $15,000 in the registry of the court and the court proceeded to distribute said funds according to the interest of the plaintiff and the intervenors. The judgment distributing the funds was entered April 17, 1953, and therein it was found and declared by the court:

"That the intervenor, Commercial Standard Insurance Company, as the Workmen's Compensation

Insurance carrier of the intervenor, Hope Flooring & Lumber Company, have a first lien upon two-thirds of the net proceeds recovered in this action after the payment of the reasonable costs of collection.

"That reasonable cost of obtaining and collecting the judgment herein is $7,500.00 and that, after payment of such costs, the plaintiff is entitled to receive one-third of the net amount remaining, and the Clerk of the Court shall distribute and pay to the parties herein from the said sum of $15,000.00 now in the registry of the court the following amounts:

Lookadoo & Lookadoo, as costs of collection, $7,500.00;
The plaintiff, Mrs. Lee E. Boulden, (Administratrix), 2,500.00;
The intervenor, Commercial Standard Insurance Company, 2,053.78.

"That the remaining sum of $2,946.22 shall be held in the registry of this court subject to payment to said intervenor upon proof of further payments of compensation by it as required by law.

"That the intervenors are not entitled to recover two-thirds of the full amount of the judgment rendered herein in favor of plaintiff, but are only entitled to a lien on two-thirds of the net amount received after payment of the cost of collection, which cost of collection includes the attorney's fee to the attorneys of the plaintiff."

The intervenors perfected an appeal from the judgment distributing the funds as above set forth.

Disposition of the appeal was postponed by the United States Court of Appeals for the Eighth Circuit until the case of Winfrey & Carlile v. Nickles, Adm'r, had been determined by the Supreme Court of Arkansas. The Supreme Court of Arkansas, on June 28, 1954, rendered its opinion in the Nick-les case, 270 S.W.2d 923, and, following that decision, the United States Court of Appeals rendered its decision on September 3, 1954, on the appeal of the intervenors. The United States Court of Appeals was of the opinion that the conflicting contentions of the parties had not been fully developed and considered by this court prior to the time of the decision by the Supreme Court of Arkansas in the Nickles case and, accordingly, vacated the judgment rendered by this court on April 17, 1953, and remanded the case for further proceedings. Hope Flooring & Lumber Co. v. Boulden, Adm'x, 8 Cir., 215 F.2d 731.

The Mandate of the Court of Appeals was filed herein on September 27, 1954, "for further proceedings consistent with the opinion of this court this day filed herein. Neither party is allowed costs in this Court. September 3, 1954."

The cause came on for hearing on December 13, 1954, in accordance with the Mandate, and at that time the plaintiff and her attorneys, Messrs. Lookadoo and Lookadoo, introduced testimony in support of their contentions and the intervenors likewise introduced testimony in support of their contentions. As heretofore stated, there is no substantial dispute as to the facts. The questions presented before the court arise because of the conflicting contentions of the plaintiff and her attorneys and the intervenors as to their respective interests in the judgment that was recovered by the plaintiff as Administratrix against the tort-feasors, the defendants.

The testimony disclosed that Lee E. Boulden was employed by the Hope Flooring & Lumber Company and that on March 3, 1952, about 5 a. m., the plaintiff received serious personal injuries while acting within the scope of his employment; that the proximate cause of the injuries was the negligence of an employee of defendants.

Messrs. Lookadoo and Lookadoo, attorneys at Arkadelphia, Arkansas, were employed by Lee E. Boulden to represent him in his claim against the defendants

to recover damages for the personal injuries sustained by him, and he agreed to pay his attorneys for such services a sum equal to 50 per cent of any amount that might be recovered from the defendants, after the payment of the expense of the trial and preparation for trial. Accordingly, the attorneys for the plaintiff, Lee E. Boulden, filed suit against the defendants in the Circuit Court of Clark County, Arkansas, on August 8, 1952. The basis of the complaint was that the plaintiff, Lee E. Boulden, on March 3, 1952, at about 5 a. m., was driving his car on U. S. Highway No. 82 about two miles east of Lewisville in Lafayette County, Arkansas; that he was traveling at a legal and lawful rate of speed and on his own right hand side of the highway and in the exercise of reasonable care, prudence and caution at the time when he suddenly came upon a truck owned by the defendants and parked on the right hand side of said highway, headed in an easterly direction, which was the same direction that the plaintiff was traveling; that it was dark and raining and the defendants' agent, servant and employee had carelessly and negligently parked the large truck and trailer owned by the defendants on the right hand side of the highway without putting out any flares or lights or warnings of any kind whatsoever; that when plaintiff discovered the unlighted truck and trailer parked as aforesaid he made every effort to avoid striking the same but was unable to do so and struck the left rear portion of the trailer and, as a result thereof, received serious personal injuries. Then follow descriptive allegations of the alleged injuries and the prayer for the recovery of a judgment to compensate for the injuries.

On August 20, 1952, the defendants filed their petition for removal on the ground that the plaintiff and defendants were citizens of different states and that the amount involved exceeded, exclusive of interest and costs, the sum of $3,000. Following the filing of the petition for removal, the defendants filed their answer denying the allegations of negligence and also denying that the plaintiff had suffered excruciating physical pain and mental anguish and that he would continue to suffer great and excruciating physical pain and mental anguish; that his injuries were permanent and lasting and that he would never be as strong and healthy as he was prior to the time complained of herein and that he would have to lead a very sheltered life for the rest of his days; and that plaintiff would never be able to work and earn a living for himself and family.

In addition to these denials, the defendants pleaded contributory negligence on the part of the plaintiff as a complete bar to his alleged cause of action.

The plaintiff died September 18, 1952, and the present plaintiff, Mrs. Lee E. Boulden, was appointed Administratrix of the Estate of the deceased on September 22, 1952. The cause had been set for pre-trial conference on September 23, 1952, and at that time the plaintiff appeared by his attorneys and the defendants by their attorneys. When the case was reached upon a call of the calendar for the pre-trial conference, the attorneys for plaintiff suggested the death of Lee E. Boulden and filed the Letters of Administration granted to the present plaintiff, Mrs. Lee E. Boulden, and upon their motion and on September 23, the cause was revived in the name of the present plaintiff as Administratrix of the Estate of Lee E. Boulden, deceased.

At that time the attorneys for the defendants were contending that the death of Lee E. Boulden was not caused by the injuries received by him on March 3, 1952, but that his death was caused by tuberculosis. To resolve this question, the attorneys agreed to take the deposition of Dr. J. D. Riley, Superintendent and Medical Director of the Arkansas Tuberculosis Sanatorium at Booneville, Arkansas, at which institution Mr. Boulden had died on September 18, 1952.

Dr. Riley is without doubt the outstanding authority on tuberculosis in the State of Arkansas and is generally recognized as such by the medical profession in Arkansas. His deposition was taken on September 26, 1952, by the attorneys for the plaintiff and the attorneys for the defendant and was filed in this court on March 18, 1953. The deposition and the testimony of Dr. Riley disclosed that the cause of the death of Lee E. Boulden was the injury that he had received on March 3, 1952, which reactivated an arrested case of tuberculosis. When these facts were developed, the intervenors appeared on September 29, 1952, and filed their intervention in which they alleged that the intervenor, Hope Flooring & Lumber Company, carried compensation insurance with the intervenor, Commercial Standard Insurance Company and that by the terms of the Workmen's Compensation Act of Arkansas, Ark.Stats. § 81–1301 et seq., the intervenors have paid to the plaintiff as compensation, medical and hospital bills to September 15, 1952, the sum of $1,101.16. The intervention makes no mention of the death of Lee E. Boulden or the revival of the cause of action in the name of the present plaintiff as administratrix. They further alleged in their intervention that they had not only paid to the plaintiff, Lee E. Boulden, the said sum of $1,101.16 but that they would in all probability be required to pay additional sums, and they alleged:

"Intervenors state that the claim of plaintiff herein against intervenors was accepted and not contested by intervenors and that said amounts which have been paid and which will be paid were paid without any contest, and that no cost of collection should be deducted from any recovery or settlement herein and that the intervenors are entitled to two-thirds of the full amount of any judgment or settlement amounts."

The prayer of the intervention was that the intervenors have a first lien upon two-thirds of the amount of money "recovered herein by judgment or of any settlement made between the plaintiff and defendants, or either of them, up to the amount that intervenors have already paid under the Arkansas Workmen's Compensation Act and upon any additional amounts that intervenors, or either of them, may be required to pay in the future as compensation or for medical or hospital services by reason of the injuries to plaintiff, and that intervenors have judgment accordingly."

On December 15, 1952, the court granted the plaintiff permission to file her first amendment to the complaint, which was filed on that date. The first amendment raised no new issues but merely substituted the administratrix as plaintiff in lieu of Lee E. Boulden, deceased.

On December 16, 1952, the defendants' answer to the first amendment to the complaint was filed. The answer denied the allegations of the complaint and the case was at issue between the plaintiff and the defendants.

On January 2, 1953, the intervenors filed their intervention to the suit as revived in the name of the administratrix. No new allegations were made in that intervention and the prayer of the intervention is identical with the original intervention previously filed by the intervenors on September 29, 1952.

Prior to the filing of the original complaint, the attorneys for the original plaintiff personally made a thorough investigation of the facts pertaining to the injuries that had been received by the plaintiff. They interviewed and took statements of witnesses and made preparation for trial. Likewise, the attorneys for the defendants made a similar investigation, conferred with the witnesses and were prepared to contest not only the question of liability but also the question as to whether the death of the original plaintiff was the result of the injuries or was the result of tuberculosis.

Apparently the investigation made by the attorneys for the plaintiff and the attorneys for the defendants convinced

them that the proximate cause of the injuries received by plaintiff was the negligence of the driver of the truck and trailer of the defendants and that the death of Lee E. Boulden was caused by the injuries received as a result of such negligence. Further conferences between the attorneys for plaintiff and the defendants led to an agreement that a jury would probably return a verdict for $15,000 upon a trial on the merits, and the attorneys for the defendants obtained permission from the defendants to pay said sum in settlement of the suit. In the meantime the court had refused to continue the trial of the case to the April, 1953, term but, because of the pressure of business in other divisions, the court was unable to reach the trial of the case on the merits until the April, 1953, term. During this delay, the plaintiff and defendants reached the agreement above mentioned on April 2, 1953, and advised the Judge of the Court that the case would be terminated without the necessity of a trial to a jury.

On April 3, 1953, the plaintiff filed an answer to the intervention of the intervenors that had been filed by them on January 2, 1953. In the answer to the intervention the plaintiff alleged that during the lifetime of Lee E. Boulden he had entered into a contract with J. H. Lookadoo and his firm to represent him in the suit against the defendants and by the terms of said contract J. H. Lookadoo was to be paid 50 per cent of the total recovery after the necessary expenses had been deducted; that, following the death of said Lee E. Boulden, the plaintiff as administratrix was substituted as party plaintiff and that on the 28th day of March, 1953, the Administratrix petitioned the Probate Court of Clark County, Arkansas, to approve her contract with the said J. H. Lookadoo. A copy of the contract was attached as an exhibit together with order of the Probate Court approving the contract of employment of J. H. Lookadoo or Lookadoo & Lookadoo as her attorneys. The plaintiff in her answer to

the intervention prayed that the intervenors be awarded only two-thirds of the amount remaining after the payment of the fee of her attorneys.

On the same date, April 3, 1953, the attorneys for plaintiff filed a petition praying that they have a lien for 50 per cent of any judgment rendered herein.

As heretofore stated, the case came on for hearing on April 9, 1953, and resulted in the entry of a judgment for the recovery of $15,000 by plaintiff from the defendants. On the same date and prior to the rendition of the judgment, the intervenors filed a "Substituted Intervention" which substituted intervention contains the same allegations as the other intervention filed by them except that they prayed "that the clerk of this court be ordered to hold said monies (paid in satisfaction of the judgment) if and when paid into the registry of this court by defendant in satisfaction of any judgment or in the carrying out of any settlement between plaintiff and defendants until further orders of this court, and that the intervenors and plaintiff be given a reasonable time and opportunity to present the matter to the Arkansas Workmen's Compensation Commission for its determination in accordance with provisions of Section 40 of the Arkansas Workmen's Compensation Act and that after the Commission has made its findings and entered its order that this court order the clerk of this court to distribute this money from the settlement or payment of the judgment in accordance with the said order of the said Commission."

On the same date the substituted intervention was filed, the intervenors filed what they designated as a "Motion to Dismiss Petition." The so-called motion to dismiss was directed to the petition of the attorneys for plaintiff to declare a prior lien upon the judgment in their favor for 50 per cent of amount of the judgment as their fee as provided in their contract of employment. The motion to dismiss the petition of the attorneys alleged that this court did not

have jurisdiction to determine whether liability of the intervenors as compensation carriers was admitted to the dependents of the deceased employee, Lee E. Boulden, nor to determine whether court costs of collection should be deducted from the full amount of the settlement of the cause of action between the plaintiff and defendants, because of the provisions of Section 40(c) of the Arkansas Workmen's Compensation Act.

Subsequent to the filing of the substituted intervention and the motion to dismiss the petition for allowance of attorney's fee, the court entered the judgment of the same date and, in connection with the motion to dismiss, the court said, "that in its opinion the said motion to dismiss should be denied and that upon deposit in the registry of the court of the amount of the judgment herein an order would be entered disbursing said money and that said petition and motion to dismiss the same would be disposed of in said order."

The petition for the allowance of attorney's fee in accordance with the contract and as costs of collection and the motion to dismiss were disposed of in the order of distribution made on April 17, 1953, hereinbefore referred to.

The judgment obtained by plaintiff in this case is the product of the skill and zeal of her attorneys or attorney, Mr. J. H. Lookadoo. He is a lawyer of outstanding ability and experience and is exceedingly careful in the preparation for trial of any case in which he is interested. Through his years of practice before this Court, the Court has found him zealous at all times in the protection of the interest of his clients. He has never to the knowledge of the Court filed a suit with the hope of obtaining a settlement out of court for a nominal sum in order to avoid the uncertainty of a trial. Likewise, the defendants were represented at all times by aggressive, able and thoroughly competent attorneys. They have had years of experience in this Court, usually in the representation of defendants, and this Court has found them zealous in

the discharge of their duty to their clients and fully able to protect their clients' interest. If this suit had originated and been disposed of prior to the adoption of the present Federal Rules of Civil Procedure, 28 U.S.C.A., the chances are that it would have proceeded to a trial to a jury but, since the plaintiff and the defendants were represented by attorneys possessing a thorough knowledge of the facts which were obtainable under the Federal Rules of Civil Procedure or by cooperation between themselves, the litigation was terminated by the entry of a judgment for plaintiff. The judgment was not entered as a mere cloak to disguise the agreement of settlement between plaintiff and defendants. As a matter of fact, the judgment was entered because the intervenors refused to execute releases to the defendants although plaintiff was perfectly willing to execute a release of all claims upon the payment of the $15,000.00. The entire proceeding as between the plaintiff and the defendants was adversary in every detail until the defendants became convinced of the justice of plaintiff's claims.

The intervenors displayed very little interest in the suit filed by plaintiff until they became convinced, through the efforts of the plaintiff and her attorney, that the death of Lee E. Boulden was caused by the injuries received on March 3, 1952. After the taking of the deposition of Dr. Riley, it became apparent that the plaintiff would be able to prove that the death of the deceased was caused by the personal injuries and thereupon the intervenors appeared and filed their first intervention. Prior to that time the intervenors were fully advised of the pendency of the suit and J. R. Tankersley, Claims Manager of the intervenor, Commercial Standard Insurance Company, testified that he offered his full cooperation to Mr. Lookadoo in the preparation of the case for trial. That testimony was denied by Mr. Lookadoo, and the Court is convinced that the attitude of the intervenor, Commercial Standard Insurance Company, was

that of a by-stander. That is, it stood by and watched the development of the facts in the case by the attorneys for the plaintiff and the defendants with the hope, no doubt, that the plaintiff would be able to obtain a substantial judgment and that it would recover the payments, without substantial cost to it, that it had been compelled to make by reason of the issuance of the Workmen's Compensation Policy of Insurance.

During the hearing, the intervenors introduced testimony in an effort to substantiate the prayer of their substituted intervention filed on April 9, 1953, the same date that the judgment in favor of plaintiff was entered. This testimony disclosed that the intervenor, Commercial Standard Insurance Company, began paying compensation to Mr. Boulden, at the rate of $25 a week, on March 31, 1952, or within about three weeks after he received the injuries on March 3, 1952. It continued to pay the compensation to Mr. Boulden, and during his lifetime it paid him $714.28 as compensation and paid medical, hospital and other incidental expenses amounting to $774.47. Following his death it also paid $250 on the funeral expenses. Subsequent to the death of Mr. Boulden, the said intervenor ceased to make any payments and, on November 18, 1952, upon the request of the attorney for the plaintiff, the Arkansas Workmen's Compensation Commission issued a notice to both intervenors advising them that a hearing would be held at 1 p. m. on December 3, 1952, to determine the claim of the plaintiff for compensation as the widow and dependent of the deceased, Lee E. Boulden. Upon receipt of this notice, Messrs. Gannaway and Gannaway attorneys for the intervenors, advised the Workmen's Compensation Commission on November 21, 1952, that they had received a report from Dr. John E. Greutter concerning the cause of the death of the deceased and that on the basis of Dr. Greutter's report the intervenors were "accepting this as a compensable claim."

Notwithstanding the letter from the attorneys for the intervenors to the Workmen's Compensation Commission, a hearing was held on December 17, 1952, before the Honorable Dave Peel, Chairman of the Commission. A transcript of the hearing was introduced in evidence and discloses that at that time the intervenors admitted "the compensability of the death of Lee E. Boulden," and that the average weekly wage of Mr. Boulden at the time of his death was $85.50.

In view of these admissions, the Chairman of the Commission stated, "and the purpose of the hearing is solely to determine all of the persons who may have been dependent on him within the meaning of the Act." When that statement was made by the Chairman, Mr. Lookadoo suggested that he would agree that "Mrs. Boulden is the only person that is solely dependent," to which the Chairman replied that he would like to have her statement. Thereupon, Mrs. Boulden was sworn and testified in response to questions propounded by the Chairman of the Commission to facts which showed her to be the sole dependent of the deceased, Lee E. Boulden. Her testimony further disclosed that the compensation at the rate of $25 per week had been paid up to the date of the death of Mr. Boulden, but that none had been paid since then. Whereupon, the Chairman of the Commission advised Mrs. Boulden that the maximum compensation of $25 per week would be paid to her with the "maximum limitation of 320 weeks or $8,000 at which time it will cease." In accordance with the facts developed at the hearing, formal order was entered by the Commission reciting the facts disclosed by the testimony at the hearing and directing the respondents (intervenors here) to "begin the payment to this claimant, at the rate of $25.00 per week, as of September 18, 1952, and to continue same subject to the provisions and limitations of the Act, not to exceed in any event $8,000.00."

The Claims Manager of the Intervenor, Commercial Standard Insurance Company, testified that the reason the Insurance Company ceased compensation payments was that the Company required additional medical testimony to establish that the death of Mr. Boulden was caused by the injuries received and that the Insurance Company had requested Dr. Riley to furnish X-ray pictures and other information to Dr. John E. Greutter, which information was promptly furnished, but Dr. Greutter had delayed making a report to the Insurance Company until December 17, 1952, and that it was merely a coincidence that the Insurance Company received the report from Dr. Greutter on the same date that Mrs. Boulden, through her attorney, Mr. J. H. Lookadoo, took steps to obtain an order requiring the payment of compensation after a hearing before the Workmen's Compensation Commission.

Mrs. Boulden testified that she was told by Mr. Tankersley, the Claims Manager, that the payments the Insurance Company had made to Mr. Boulden were made under protest, but the fact remains that the Insurance Company did make the payments promptly to Mr. Boulden until his death, and the hiatus in the payments occurred after his death on September 18, 1952. The payments were not resumed until after the hearing before the Workmen's Compensation Commission, but the insurance carrier did not expressly deny liability for compensation.

Before considering the present contentions of the parties, the Court feels that a brief statement of the reasons for its prior holding might be helpful. At the time of the hearing, April 9, 1953, when the judgment in favor of plaintiff against the defendants was entered, the Court stated to the attorneys that an order of distribution would be entered after the defendants deposited in the registry of the court the amount of the judgment. Neither the attorneys for the plaintiff nor the attorneys for the Intervenors cited to the Court any authorities on the question of the proper distribution of the funds, other than the Statute itself. No question was raised as to whether the case was or was not a contested case. Plaintiff and her attorneys merely contended that the attorney's fee was a part of the cost of collection and should be deducted before the remainder of the recovery was divided between plaintiff and the Intervenors. Intervenors, on the other hand, contended that since they had admitted liability for compensation, no cost of collection should be deducted from their portion of the recovery, and that the matter should be referred to the Arkansas Workmen's Compensation Commission for determination as to the proper distribution of the money recovered by plaintiff.

The Court was, and still is, of the opinion that the Statute, 81–1340, Ark.Stats.1947, Annotated, is vague and ambiguous, and for that reason the Court considered decisions of other jurisdictions in an effort to determine the real meaning of the Statute. While it is true that the Workmen's Compensation Acts vary from state to state, nevertheless it is generally held that attorney's fees are to be deducted before the lien of the insurance carrier attaches. See Vol. 2, Larson's Workmen's Compensation Law, Sec. 74.32, p. 210, and cases cited therein. See also, Curtin v. City of New York, 287 N.Y. 338, 39 N.E.2d 903, 142 A.L.R. 166, and the annotation beginning at page 170 of 142 A.L.R. The same holding has been reached in a case where there was a compromise settlement reached between the plaintiff and the defendant. Hardware Mutual Casualty Co. v. Butler, 116 Mont. 73, 148 P.2d 563.

In view of these decisions, and the general purpose of the Act to protect the rights of injured employees, the Court resolved the ambiguities in the Act in favor of plaintiff and her attorneys, and held that the Intervenors' right of subrogation did not apply to the attorney's fee, and instead only applied to plaintiff's net recovery of $7,500. The Court was also of the opinion that it had juris-

diction of the parties and subject matter, and jurisdiction to determine the reasonableness of the judgment and plaintiff's attorney's fee, without the necessity of referring the matter to the Workmen's Compensation Commission.

Therefore, the Court of Appeals was entirely correct in stating that this Court apparently had not passed upon the question of whether this was a "contested case," and in view of the decision of the Supreme Court of Arkansas in the case of Winfrey & Carlile v. Nickles, Adm'r, supra, that is the primary question now before the Court for determination.

The plaintiff and her petitioning attorneys, Lookadoo & Lookadoo, contend that the proceedings in the instant action were sufficient to constitute the action a "contested case" as that term was employed in the cases of Winfrey & Carlile v. Nickles, Adm'r, supra, and Hope Flooring & Lumber Co. v. Boulden, Adm'x, supra. More specifically, they contend that the action was an adversary proceeding from its inception until its conclusion; that complete preparations were made for the trial of the case; and that everything was done in this case that was done in the Nickles case, except that there was no formal trial in the instant case.

Thus, plaintiff and her attorneys conclude that the attorneys should receive as their compensation $7,500, which is 50% of the total recovery of $15,000.

The Intervenors are frank to admit that they must establish two propositions before they can prevail, i. e., (1) that they admitted liability for compensation, and (2) that the instant action was not a "contested case" within the meaning of the Nickles decision, supra.

As to the first requirement, Intervenors contend that they never denied liability for compensation, and that their only reason for a delay in beginning the death benefit payments was an unavoidable delay in receiving the report from their own Doctor as to the cause of Mr. Boulden's death.

With regard to the second admitted requirement Intervenors contend that an actual trial must be had before an action becomes a contested case, or that at least something more than was done herein is required. Specifically, Intervenors contend that it is established that the mere filing of a complaint and answer does not make an action a contested case, Hope Flooring & Lumber Co. v. Boulden, Adm'x, supra, and that the only thing done in the instant case in addition to the filing of pleadings was the taking of one deposition, which is not sufficient to constitute the action a contested case.

Intervenors further contend that the fact of a judgment being entered in the case is immaterial, since it was merely a method used to assure that all parties to the action would be bound by the settlement.

The Intervenors conclude their argument with the assertion that since the instant action was not a contested case, and they admitted liability for compensation, that they are entitled to a first lien upon two thirds of the amount of the recovery, or a lien upon such amount of the total recovery of $15,000 as may be required to remunerate them for all payments of compensation they have made and will be required to make, and that no cost of collection, including attorney's fee, should be deducted from their portion of the recovery. Intervenors further contend that the question of the distribution of the $15,000 should be referred to the Arkansas Workmen's Compensation Commission for its determination, and that after said Commission has made its findings and entered its order of distribution, that the Clerk of this Court be ordered to distribute the said $15,000 in accordance with the order of the Commission.

The Court has found from the testimony that the Intervenors did not contest the payment of compensation to Lee E. Boulden during his lifetime, but that they did cease making payments after his death. Although Intervenors apparently gave plaintiff no reason for stopping the payments, they now say

that they desired more information as to the cause of Mr. Boulden's death, and that their file did not reflect whether his death was caused by the accident or by other causes. They requested and obtained from Doctor Riley X-ray pictures of Lee E. Boulden, along with other reports, and sent the material to a Doctor of their choice for interpretation. In the meantime plaintiff's attorneys thought Intervenors were denying liability, and therefore requested a hearing before the Arkansas Workmen's Compensation Commission on the question of her right to recover compensation. On the same day this request was made Intervenors received the delayed report from their Doctor advising that in his opinion the deceased died as a result of the injuries received in the accident. A few days later, after Intervenors had been notified of a date for hearing on plaintiff's claim for compensation, Intervenors' attorneys advised the Commission that they were accepting "the claim of Mrs. Boulden as a compensable claim."

On December 17, 1952, a hearing was had before the Commission to determine the dependent or dependents of deceased, liability of Intervenors for compensation having been admitted. At the conclusion of the hearing the Commission entered its order declaring plaintiff to be the sole dependent of deceased and to be entitled to compensation.

■ At no time did Intervenors expressly deny liability for compensation, and the only reason for their delay in paying the death benefit payments was that they had some difficulty in obtaining the report of their Doctor. In view of these facts, the Court is of the opinion that Intervenors admitted liability for compensation within the meaning of the Arkansas Workmen's Compensation Act, Sec. 81–1340(c), supra (1953 Supp.).

■ Thus the remaining, and the principal, question is whether the instant suit was a "contested case." Neither counsel for plaintiff nor counsel for the Intervenors were able to find any pertinent authorities bearing upon this question. Likewise, the Court was unable to find any decisions or authorities discussing the precise point herein involved. Generally speaking, the term "contested case" may have varied meanings depending upon the context in which the term is used, and the meaning of the term in a particular case must be determined from a consideration of all the facts and circumstances, particularly what was done and what was required to be done to bring about or to produce the judgment or recovery. In the absence of other pertinent authorities on the question, the Court must look to the opinion of the Arkansas Supreme Court in the Nickles case and the opinion of the Court of Appeals in this case, in an effort to ascertain the exact meaning of the term "contested case."

In the Nickles case the Court, after holding that the Statute did not apply to contested cases, said [270 S.W.2d 926]:

"In practical effect this construction is desirable. Here we have a contested tort action, involving a trial that lasted for two days. The Commission is certainly in no position, without a hearing, to determine what is reasonable compensation for the plaintiffs' counsel. For it to make that determination in a case of this kind the record might have to be transcribed and submitted to the Commission. What began as one lawsuit might easily become two.

"The circuit judge, on the other hand, is obviously the person best able to fix the fee. Not only has he presided over the trial but he is qualified by training and by experience to assess reasonable compensation for legal services. It would be manifestly illogical to require the circuit judge to surrender jurisdiction over a matter in which his own judgment is peculiarly valuable."

In Hope Flooring & Lumber Co. v. Boulden, Adm'x, supra, the Court begin-

ning at the bottom of page 733 of 215 F.2d said:

"We would not feel warranted in abstractly assuming that the opinion of the Arkansas Supreme Court means that a mere filing of pleadings in court of itself has the effect, for purposes of the distinction which the Court drew in relation to subsection (c) of § 81-1340, supra, of necessarily lifting whatever payment may be thereafter made by the third party, for purposes of the statute, into the category of fruits of 'a contested case.'

"Nor do we feel entitled to hold abstractly that what may be in fact a compromise settlement of a claim against a third party, without representing the product of such legal services and processes as are usually incident to the preparing, conducting and terminating of litigation, will nevertheless automatically acquire the status of proceeds of 'a contested case', within the use of that term in the Arkansas Supreme Court opinion, merely because the parties, or one of them, may desire, for some extraneous reason or purpose, to have the court cloak the settlement with the formality of a judgment entry.

"For these reasons, we think that the case should be remanded to the trial court, to enable the conflicting contentions of compromise settlement and contested case, now being abstractly urged before us, to be developed and considered in their full light, and with the benefit of that court's knowledge of the nature of the proceedings had before it."

The instant case certainly was not a "friendly case." It was actively contested from the time of its inception until shortly before the entry of the judgment in favor of plaintiff and against the defendants. The skill of plaintiff's attorneys, and particularly Mr. J. H. Lookadoo, was employed in the filing of pleadings, contacting of witnesses and taking their statements, appearing at a pre-trial conference, negotiating with defendants' attorneys, taking of the deposition of Doctor J. D. Riley (which proved to be the deciding factor in the case), and otherwise conducting the litigation to its successful conclusion. This case is actually a good example of the effect of the Federal Rules of Civil Procedure in determining the merits of a case without the necessity of an expensive formal trial.

The wisdom of the Rules is demonstrated, not only by their use in the obtaining of information, but also by the encouragement of cooperation and voluntary exchange of information between attorneys for opposing parties. The Rules provide a guide and advise the attorneys of the extent and nature of the information that can be obtained by them in preparing cases for trial. Between attorneys fully conversant with the Rules, this information is often voluntarily exchanged without the need of resorting to the use of the Rules.

As heretofore stated, had the instant case been litigated prior to the adoption of the Rules, there is little doubt but that a trial would have been required to settle the issues between plaintiff and the defendants. However, as a result of the diligent efforts of plaintiff's attorneys, and especially the establishing, by the deposition of Doctor Riley, of the cause of Mr. Boulden's death, plaintiff was able to convince defendants that they were liable for said death, and that the sum of $15,000 would be a reasonable recovery for the plaintiff. And the Court is of the opinion that ordinarily it requires as much skill and ability, and sometimes more, to investigate a case and to use the Rules if necessary as a means of terminating a case without a formal trial, as it does to participate in the actual trial of a case.

What has been said about the effective procedure followed by plaintiff's attorneys also bears upon the question of which tribunal is in a better position

to evaluate the services of said attorneys. Would it be more logical to have the trial judge in the Federal Court, who presumably is familiar with the Federal Rules of Civil Procedure and the skill required for the investigation of a case and the effective use of these Rules, pass upon the reasonableness of an attorney's fee in a case of this kind, or would it be more logical to refer the question of an attorney's fee to the Workmen's Compensation Commission, which Commission operates under rules entirely different from the Federal Rules? To state the question is to answer it.

The Court is convinced that this was a contested case within the holding of the Nickles case, and that this Court has jurisdiction to determine the reasonableness of the settlement and the reasonableness of petitioners' attorney's fee.

█ The amount of the recovery in the instant case was approved by the Court by the entry of the judgment. There has been no contention that the recovery was unreasonable insofar as any of the parties were concerned, and in fact it appears that the recovery was completely fair to all of the parties. Likewise, there has been no contention that the contract of employment between plaintiff and her attorneys was unreasonable, and under the circumstances appearing from the evidence the Court is of the opinion that said contract was reasonable.

█ The practical aspects inherent in the question also point to the conclusion the Court has reached. Under the provisions of the Arkansas Workmen's Compensation Act either the injured employee or the compensation carrier may bring an action against a third party tort-feasor. In the instant case the injured employee initiated the action, and it was brought to a successful conclusion solely through the efforts of plaintiff's attorneys. Not only did said attorneys do all the work leading to the recovery, but they also used their own funds in paying the expenses incident to preparing the case for trial. As a result of their efforts the money which plaintiff will receive has been increased substantially, and the Intervenor, Commercial Standard Insurance Company, will recover a substantial portion of the expenditures made by it for compensation under the terms of the policy which it issued and for which it received the lawful premium. When the said Intervenor issued the policy, it, for a consideration, assumed a hazard. Now the liability under that policy has been greatly reduced through the efforts of plaintiff and her attorneys, and with no assistance or apparent cooperation from the Intervenors. In this connection, see Hardware Mutual Casualty Co. v. Butler, supra, at pages 568–570 of 148 P.2d.

It is true that on January 2, 1953, the attorneys for the Intervenors wrote plaintiff's attorneys offering their assistance, but at that time plaintiff's attorneys had already established the real issue in the case, i. e., that Mr. Boulden's death was caused by the accident, and there was little left to do. As a matter of fact, when plaintiff was attempting to establish that her husband's death was caused by the accident and not by tuberculosis, the Intervenors were in no position to assist her because they, at that time, had not admitted liability for compensation for his death, and in all probability if plaintiff's attorneys had not established the cause of Mr. Boulden's death (by the deposition of Doctor Riley) the Intervenor would not have admitted liability to his widow and dependent for compensation.

Thus during the crucial stage of the case, Intervenors' interests were antagonistic to those of plaintiff, and it was only after the cause of the death was established and Intervenors admitted liability for compensation that the interests of plaintiff and the Intervenors coincided.

Intervenors are not to be criticized for desiring and obtaining a report of their own Doctor in an effort to be assured

of the cause of Mr. Boulden's death before paying his widow compensation. Nor are Intervenors to be criticized for desiring to know the cause of his death before taking an active interest in plaintiff's case against defendants. But this failure to assist plaintiff at the critical stage of the case, while perhaps unavoidable, nevertheless militates against Intervenors' contention herein that plaintiff's attorneys are not entitled to an attorney's fee based upon the full recovery of $15,000.

Another practical consideration is worthy of mention. If Intervenors' contention were accepted, that is, that an actual trial is required before an action becomes a contested case, the result would be to discourage the termination of litigation, and would probably cause a return to the former practice of proceeding to trial without a full knowledge of the facts. If the attorney's fee is dependent upon whether or not a trial is required, an attorney would not be inclined to terminate the litigation without an actual trial unless it clearly appeared that his client's interest demanded such action. In the instant case, to hold that an actual trial is required would be to penalize plaintiff's attorneys for bringing the case to a successful conclusion without the necessity of a formal trial. Such a result is not to be desired.

Thus, since the Court is of the opinion that the case was a contested one, the Court should proceed to distribute the funds in accordance with the provisions of the Workmen's Compensation Act of Arkansas, which is to say that a judgment should be entered directing the Clerk of this Court to distribute the funds in the registry of the Court on the following basis:

Petitioners, Lookadoo & Lookadoo, $7,500;

Plaintiff, Mrs. Lee E. Boulden, Adm'x, $2,500;

Intervenor, Commercial Standard Insurance Company, $4,588.75, being the total paid by said company to November 29, 1954.

The remaining sum of $411.25 should be held in the registry of the Court subject to payment to the said Intervenor upon proof of further payments of compensation in that amount.

A judgment in accordance with the above should be entered.